**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------

SHIVA STEIN,                                          :
                                                     :
        Plaintiff,                                :     Civil Action No. 22-cv-3800
                                                     :
v.                                                   :     **COMPLAINT FOR VIOLATIONS OF**
                                                     :     **SECTIONS 14(a) AND 20(a) OF THE**
NEENAH, INC. WILLIAM M. COOK,                        :     **SECURITIES EXCHANGE ACT OF**
DONNA M. COSTELLO, MARGARET S.                       :     **1934**
DANO, TIMOTHY S. LUCAS, PHILIP C.                    :
MOORE, JULIE A. SCHERTELL, SHRUTI                    :     **JURY TRIAL DEMANDED**
SINGHAL, and TONY R. THENE,                          :
                                                     :
        Defendants.                               :
---------------------------------------------------------      :
                                                     :
                                                     :
                                                     :

        Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon

information and belief, including investigation of counsel and review of publicly-available

information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal

knowledge:

        1.     This is an action brought by Plaintiff against Neenah, Inc., ("Neenah or the

"Company") the members Neenah's board of directors (the "Board" or the "Individual

Defendants"), and Schweitzer-Mauduit International, Inc. and affiliates ("Schweitzer-Mauduit"

and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and

20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a),

and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the

proposed merger between Neenah and Schweitzer-Mauduit.

        2.     Defendants have violated the above-referenced sections of the Exchange Act by

causing a materially incomplete and misleading Registration Statement on Form S-4 (the

"Registration Statement") to be filed on May 4, 2022 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders.  The Registration Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Samurai Warrior Merger Sub, Inc., a wholly owned subsidiary of Schweitzer-Mauduit ("Merger Sub"), will merge with and into Neenah with Neenah surviving as a wholly owned subsidiary of Schweitzer-Mauduit (the "Proposed Transaction").  Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement"), each Neenah stockholder will receive 1.358 shares of Schweitzer-Mauduit common stock (the "Merger Consideration"). Following the consummation of the Proposed Transaction, Company shareholders will own 42% of the combined company and Schweitzer-Mauduit shareholders will own 58% of the combined company.

3.     As discussed below, Defendants have asked Neenah's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Registration Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act.  Specifically, the Registration Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, Perella Weinberg Partners LP ("Perella Weinberg") in support of its fairness opinion.

4.     It is imperative that the material information that has been omitted from the Registration Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.     For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Neenah's stockholders or, in the event the

Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because the closing of the Proposed Transaction will take place in this District.

## PARTIES

9.      Plaintiff is, and has been at all relevant times, the owner of Neenah stocks and has held such stocks since prior to the wrongs complained of herein.

10.      Individual Defendant William M. Cook has served as a member of the Board since 2016 and is the Company's Non-Executive Chair of the Board.

11.      Individual Defendant Donna M. Costello has served as a member of the Board since October 2019.

12.      Individual Defendant Margaret S. Dano has served as a member of the Board since 2015.

13.     Individual Defendant Timothy S. Lucas has served as a member of the Board since 2004.

14.     Individual Defendant Philip C. Moore has served as a member of the Board since 2004.

15.     Individual Defendant Julie A. Schertell has served as a member of the Board since May 2020 and is the President and Chief Executive Officer of the Company.

16.     Individual Defendant Shruti Singhal has served as a member of the Board since July 2021.

17.     Individual Defendant Tony R. Thene has served as a member of the Board since February 2019.

18.     Defendant Neenah is a Delaware corporation and maintains its principal offices at 3460 Preston Ridge Road, Suite 600, Alpharetta, Georgia 30005.  The Company's stock trades on the New York Stock Exchange under the symbol "NP."

19.     The defendants identified in paragraphs 10-17 are collectively referred to as the "Individual Defendants" or the "Board."

20.     The defendants identified in paragraphs 10-18 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

A.     **The Proposed Transaction**

21.     Neenah, a specialty materials company, engages in the performance-based technical products, and fine paper and packaging products businesses in North America, Germany, Spain, and rest of Europe. Its Technical Products segment offers filtration media for transportation, water, and other end use applications; saturated and unsaturated crepe, and flat paper tapes; and coated lightweight abrasive papers for automotive, construction, metal, and woodworking

4

industries. It also provides digital transfer media; label and tag products for digital printing; latex saturated and coated, premask, medical packaging, digital transfer, publishing, security, clean room, passports, and release papers; furniture backers; and release liners. The Company's Fine Paper and Packaging segment offers writing, text, cover, and specialty papers; and envelopes used in commercial printing services, corporate identity packages, and advertising collaterals. It also provides packaging products for retail, cosmetics, spirits, and electronics end-use markets; bright papers for direct mails, advertising inserts, scrapbooks, and marketing collaterals; cardstock, stationary paper, journals, and planners; and translucent and art papers; and papers for optical scanning and other specialized applications. The Company markets its products under the JET-PRO SofStretch, KIMDURA, PREVAIL, NEENAH, GESSNER, CLASSIC, CLASSIC CREST, ENVIRONMENT, ROYAL SUNDANCE, TOUCHE, ASTROBRIGHTS, SOUTHWORTH, ESTATE LABEL, IMAGEMAX, SKIVERTEX, PELLAQ, CORVON, SENZO, and KIVAR brand names through authorized paper distributors, converters, retailers, and specialty businesses, as well as direct to end users. The Company was formerly known as Neenah Paper, Inc. and changed its name to Neenah, Inc. in January 2018. Neenah was incorporated in 2004 and is headquartered in Alpharetta, Georgia.

22.     On March 28, 2022, the Company and Schweitzer-Mauduit jointly announced the Proposed Transaction:

> ALPHARETTA, Ga.--(BUSINESS WIRE)-- Schweitzer-Mauduit International, Inc. (NYSE: SWM) ("SWM") and Neenah, Inc. (NYSE: NP) ("Neenah"), two leading global manufacturers of specialty materials, today announced that they have entered into a definitive agreement to combine in an all-stock merger of equals with combined revenues of approximately $3 billion, expanded scale and capabilities, and accelerated growth opportunities.

This transaction brings together two organizations with highly complementary technologies, geographies and product portfolios in specialty materials. The combined company will capitalize on powerful megatrends with strong positions in large, growing categories including Filtration, Healthcare & Wellness, Protective & Adhesive Solutions, Industrial Solutions, and Packaging & Specialty Paper.

Under the terms of the agreement, which was unanimously approved by the Boards of Directors of both companies, shareholders of Neenah will receive 1.358 shares of SWM common stock for each share of Neenah common stock owned. Following the closing of the transaction, SWM shareholders will own approximately 58 percent of the combined company, and Neenah shareholders will own approximately 42 percent of the combined company, in each case, on a fully diluted basis.

"I'm proud of the work our team has done to successfully expand and grow our global portfolio over the last several years, adding core capabilities and scale to better serve our customers. This merger is an exciting next step on our journey and one that will deliver significant shareholder value," said Dr. Jeff Kramer, Chief Executive Officer of SWM. "SWM has earned a reputation as a critical solutions provider. The combination with Neenah is a continuation of our strategic intent to solve our customers' most complex design challenges. We are excited by the numerous benefits of this merger, including the significantly broadened customer base, product lines and technical expertise. At the same time, combining the talented teams, cultures and well-run operations of Neenah and SWM will enhance our position as a world-class leader across our end-markets, poised to drive long-term growth and attractive returns. We look forward to working with the Neenah team to unlock the tremendous value of this compelling combination for all stakeholders."

"This combination is a unique opportunity to accelerate our growth strategy and continue the transformation of our business, creating a global leader in specialty materials with strong and defensible positions in attractive end-markets," said Julie Schertell, President and Chief Executive Officer of Neenah. "Merging our two companies enhances our ability to grow and solve the needs of our customers for demanding, innovative products that address global challenges such as the necessity for clean water and air, sustainable alternatives, and enhanced health and wellness. The synergy potential for this transaction is significant, and the all-stock structure enables shareholders of both companies to participate in the

substantial value creation and future growth opportunities of the combined company. SWM has a talented team that shares our values, with a focus on employee safety, innovation and customer intimacy. We look forward to delivering on the potential of this transaction by capitalizing on our combined capabilities and strengths."

**Strategic and Financial Benefits of the Combination**

- **Creates a Global Leader in Specialty Materials with a Broad Portfolio of Solutions:** Combining the Neenah and SWM product portfolios will enhance exposure to growing, global end-markets with clear megatrends of clean air and water, health and wellness, sustainability, and advanced protective solutions. Complementary capabilities exist in key categories including filtration, healthcare, tape, packaging, release liners, and adhesive solutions.
- **Highly Achievable Cost Synergies:** The transaction is expected to achieve at least $65 million in annual run-rate cost synergies within 24-36 months post close. Key cost savings include organizational optimization, procurement and other supply chain efficiencies, and redundant public company costs.
- **Accelerates Growth with Enhanced Scale and Larger Global Footprint:** The combination is expected to accelerate long-term revenue growth, with numerous opportunities to cross-sell the extensive suite of specialty materials, leverage each company's deep customer relationships, combined technology portfolio, and innovation capabilities. In addition, with operations spanning four continents, the combination will create a stronger presence to better serve customers both globally and regionally, with significant opportunities to increase penetration in several geographies.
- **Strong Financial Profile and Commitment to Shareholder Value Creation:** The combined company is projected to have approximately $450 million of pro-forma adjusted EBITDA (including synergies) and margins of more than 15 percent in highly specialized, defensible categories. The transaction is also expected to increase the combined company's ability to generate cash, providing financial stability and flexibility. The combined company intends to uphold Neenah and SWM's track records of prioritized uses of cash, including returning capital to shareholders. As a larger, well-capitalized company, the combined entity also expects to benefit from greater access to capital markets, opportunities for lower cost of capital, and long-term strategic optionality.
- **Accelerates Innovation:** The combined company's suite of technologies, intellectual property, and R&D capabilities in material science is expected to accelerate the pace of innovation, with the potential to deliver breakthrough, high-growth products that better

meet the ongoing needs of customers and drive long-term profitability for shareholders.

- **Shared Values and Culture**: SWM and Neenah have highly aligned outlooks on business, prioritizing employee safety and development, and partnering with customers to create premium, unique solutions that fuel their success. With shared commitments to environmental stewardship, sustainability, engagement, inclusion, and corporate governance, the combined business will build upon both companies' ongoing ESG efforts.

### Headquarters, Leadership and Governance

The combined company will remain headquartered in Alpharetta, Georgia and will be led by a proven management team that reflects the strengths and capabilities of both organizations. Upon close, Julie Schertell, President and Chief Executive Officer of Neenah, will serve as President and Chief Executive Officer of the combined company. Dr. Jeff Kramer, Chief Executive Officer of SWM, will serve as a strategic advisor for the combined company following the close of the transaction. A new name for the combined company will be selected in connection with the merger.

The new Board will consist of nine directors, five of whom will be from the SWM Board and four of whom will be from the Neenah Board, including Ms. Julie Schertell. John D. Rogers, Non-Executive Chairman of the SWM Board, will serve as Non-Executive Chair of the combined company's Board of Directors.

### Approvals and Closing

The transaction has been unanimously approved by the Boards of Directors of both SWM and Neenah. The merger is expected to close in the second half of 2022, subject to Neenah and SWM shareholder approval, regulatory approvals and other customary closing conditions.

### Advisors

J.P. Morgan Securities LLC is serving as financial advisor and King & Spalding LLP is serving as legal advisor to SWM. Perella Weinberg Partners LP is serving as financial advisor and Bryan Cave Leighton Paisner LLP is serving as legal advisor to Neenah. Cravath, Swaine & Moore LLP is serving as legal advisor to the independent members of the Neenah Board of Directors.

\* \* \*

23.     The Board has unanimously agreed to the Proposed Transaction.  It is therefore imperative that Neenah's stockholders are provided with the material information that has been omitted from the Registration Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.**     **The Materially Incomplete and Misleading Registration Statement**

24.     On May 4, 2022, Neenah and Schweitzer-Mauduit jointly filed the Registration Statement with the SEC in connection with the Proposed Transaction.  The Registration Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction.   The Individual Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

25.     The Registration Statement fails to provide material information concerning financial projections by management and relied upon by Perella Weinberg in its analyses. The Registration Statement discloses management-prepared financial projections for the Company which are materially misleading. The Registration Statement indicates that in connection with the rendering of its fairness opinion, that the management of Schweitzer-Mauduit and Neenah prepared certain non-public financial forecasts (the "Projections") and provided them to the Board and Perella Weinberg with forming a view about the stand-alone and pro forma valuations.

Accordingly, the Registration Statement should have, but fails to provide, certain information in the projections that management provided to the Board and Perella Weinberg. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig*., 924 A.2d 171, 201-203 (Del. Ch. 2007).

26.     For the Company Projections, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics for fiscal years 2022 through 2024: EBITDA, EBIT, and Unlevered Free Cash Flows, but fails to provide line items used to calculate these metrics or a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

27.     For the Schweitzer-Mauduit Projections, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics for fiscal years 2022 through 2024: EBITDA, EBIT, and Unlevered Free Cash Flows, but fails to provide line items used to calculate these metrics or a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

28.     When a company discloses non-GAAP financial measures in a Registration Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or

released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

29.     The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.

30.     Thus, to cure the Registration Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Registration Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Registration Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses for Neenah*

31.     With respect to Perella Weinberg's *Selected Publicly-Traded Companies Analysis*, the Registration Statement fails to disclose the metrics and the multiples of the selected comparable companies selected by Perella Weinberg for the analysis.

32.     With respect to Perella Weinberg's *Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) terminal value of the Company and Schweitzer-Mauduit as of December 31, 2024; (ii) line items used to calculate Neenah's and Schweitzer-Mauduit's projected unlevered free cash flows; (iii) the inputs and assumptions underlying the use of the range of EV multiples of 7.5x to 9.5x; (iv) the inputs and assumptions underlying the

discount rates ranging from 6.50% to 7.50% for Neenah and 6.00% to 7.00% for Schweitzer-Mauduit; (v) the Company's and Schweitzer-Mauduit's weighted average cost of capital; and (vi) the amount of fully diluted number of shares of Company and Schweitzer-Mauduit common stock.

33.     With respect to Perella Weinberg's *Research Analyst Price Targets* analysis, the Registration Statement fails to disclose: (i) the equity research analysts reviewed; and (ii) the price targets published by each research analyst.

34.     In sum, the omission of the above-referenced information renders statements in the Registration Statement materially incomplete and misleading in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

**CLAIMS FOR RELIEF**

**<u>COUNT I</u>**

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

35.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

36.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

37.     Defendants have issued the Registration Statement with the intention of soliciting stockholder support for the Proposed Transaction.   Each of the Defendants reviewed and authorized the dissemination of the Registration Statement and the use of their name in the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

38.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.   Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).   The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

39.     Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement.   The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.   Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully.   Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

40.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and

omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate

remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully

protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

41.     Plaintiff incorporates each and every allegation set forth above as if fully set forth

herein.

42.     The Individual Defendants acted as controlling persons of Neenah within the

meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as

directors of Neenah, and participation in and/or awareness of the Company's operations and/or

intimate knowledge of the incomplete and misleading statements contained in the Registration

Statement filed with the SEC, they had the power to influence and control and did influence and

control, directly or indirectly, the decision making of Neenah, including the content and

dissemination of the various statements that Plaintiff contends are materially incomplete and

misleading.

43.     Each of the Individual Defendants was provided with or had unlimited access to

copies of the Registration Statement and other statements alleged by Plaintiff to be misleading

prior to and/or shortly after these statements were issued and had the ability to prevent the issuance

of the statements or cause the statements to be corrected.

44.     In particular, each of the Individual Defendants had direct and supervisory

involvement in the day-to-day operations of Neenah, and, therefore, is presumed to have had the

power to control or influence the particular transactions giving rise to the Exchange Act violations

alleged herein, and exercised the same.  The omitted information identified above was reviewed

by the Board prior to voting on the Proposed Transaction.  The Registration Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Registration Statement.

45.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

46.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

47.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

48.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with,

consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Registration Statement;

B.      Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.      Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.      Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: May 10, 2022                          **MELWANI & CHAN LLP**

                                   By:   */s/ Gloria Kui Melwani*
                                         Gloria Kui Melwani
                                         1180 Avenue of the Americas, 8th Fl.
                                         New York, NY 10036
                                         Telephone: (212) 382-4620
                                         Email: gloria@melwanichan.com

                                         *Attorneys for Plaintiff*